MARVIN W. SIMMONS and IVA G. SIMMONS, ET AL., Petitioners, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Simmons v. Commissioner
Docket Nos. 4630-74 1425-76.
United States Tax Court
T.C. Memo 1980-55; 1980 Tax Ct. Memo LEXIS 536; 39 T.C.M. (CCH) 1123; T.C.M. (RIA) 80055; February 27, 1980, Filed Marvin W. Simmons, pro se G. J. Beaudoin, for the respondent. QUEALY
MEMORANDUM FINDINGS OF FACT AND OPINION QUEALY, Judge: Respondent determined deficiencies in income tax and additions thereto due from Marvin W. Simmons under section 6653(b) [1] as follows: Taxable
Additions
Year
Deficiencies
to Tax
1962
$11,217
$ 5,605
1963
18,271
9,136
1964
20,593
10,297
1970
1,135
None
In addition, respondent determined a deficiency in income tax due from petitioner Iva. G.Simmons for the taxable year 1970, in the amount of $1,115.00. The issues presented for decision are as follows: (1) Whether petitioner *537 Marvin W. Simmons understated his business income for the years 1962, 1963 and 1964 by overstating his business expenses for these years. (2) Whether any part of the resulting deficiencies in income taxes for each of the years 1962, 1963 and 1964 was due to fraud with intent to evade taxes. (3) Whether assessment of the deficiencies and additions to taxes for the years 1962 through 1964 are barred by the statutes of limitations.
(4) Whether petitioners are entitled to deductions for business expenses for 1970 in excess of the amounts allowed by respondent. FINDINGS OF FACT Marvin W. Simmons (hereinafter petitioner) and Iva G. Simmons, his wife, filed joint income tax returns for the taxable years 1962 through 1964 inclusive. For the taxable year 1970 they filed separate returns. At the time of filing the petitions herein, they resided in Fresno, California. At all times materially herein petitioner maintained checking accounts at State Center Bank, Fresno, California in the name of Marvin W. Simmons, M.D. and at Wells Fargo Bank, Fresno, California in the name of Marvin W. Simmons, M.D. These checking accounts will hereinafter be referred to as th medical office checking *538 accounts.
Petitioner also maintained a daily check log which he kept in the form of a bound ledger. This log listed checks drawn in payment of reported business related expenses, and checks drawn in payment of reported nonbusiness related expenses. During each of the calender years 1962, 1963 and 1964, petitioner maintained a Colwell Journal (hereinafter Colwell) which in part consisted of: (a) a daily appointment record, (b) a daily record of charges on account, (c) cash records for cash received, and (d) a daily expense journal. This journal was set up in the format of monthly expense sheets consisting of two sheets for each month. Petitioner exercised complete control and supervision over all procedures in his medical office. Such procedures included those whereby: (a) petitioner's employee would open incoming mail and separate payments on account from incoming bills; (b) thereafter, petitioner's employee would present the incoming bills to petitioner for his review; (c) upon petitioner's review of the incoming bills, petitioner would return them to the office employee for temporary filing and until such time as petitioner instructed the office employee to prepare *539 checks in payment of such bills; (c) prior to the drawing of any checks in payment of his bills, petitioner would again review the bills; (e) upon the second review, petitioner would segregate the unpaid bills into two separate groups--office expenses and nonoffice expenses; (f) petitioner would indicate to his employee which bills were to be treated as office expenses and which bills were to be treated as nonoffice expenses; (g) upon petitioner's designation of a bill as an office expense or as a nonoffice expense, petitioner's office employee would draw up the check in payment of the bill and at that time would assign either an office expense number or a nonoffice expense number to said check; (h) thereafter, petitioner's employee would list such checks, according to the number assigned thereto, to the office expense page or the nonoffice expense page of the daily check log; (i) said checks would then be presented to petitioner for signature; (j) upon his receipt of the checks for his signature, petitioner would again review the bills and compare the checks with that information placed in the daily check log by petitioner's employee; (k) upon signing each of said *540 checks and unless petitioner detected an error, petitioner would check off the corresponding check entry in the daily check log by imprinting a mark next to said entry. In addition to the foregoing procedures, at other times petitioner himself would handle the payment of bills. On occasions, checks were issued by petitioner and entries made in the records in petitioner's handwriting without consultation or direction to any other party. During each of the years 1962 to 1964 inclusive, petitioner deducted checks issued in payment for many and varying personal expenditures as a business expense. Furthermore, petitioner caused to be entered on his books and records a false description of such checks in order that it might appear that the expenses were legitimate business expenses of his profession. Such expenses included the following: Payee
Purpose
Talawanda and Saratoga
Attendance by petitioner's
Camps
daughters
N. Drasin Stamp Co.
Stamp-O-Rama
Pasack Stamps
Purchases for petitioner's
David Chassey and Elmer
stamp collection
Long, stamp collectors
Pete's Disposal
Garbage collected at
residence
Conditioned Air
Air conditioning at
residence
Best Way Cleaners
Personal cleaning
Herb Bauer's
Sporting goods
Shade Wallen and
Sumio Kubo
Dental services
Lucky Auto Parts
Bicycle for son
Paddock Pools of
Pool service at
California
residence
Shields X-Ray
Investment in medical
partnership
Abbey Rents
Rental of items for
son's bar mitzvah
Tahoe Judicial District
Court
Traffic fine for son
Barnett National Car
Personal car rental
Rental
Fresno Lodge #247
Membership in fraternal
organization (Masons)
Vienna Sausage Mfg. Co.
Food for personal party
Sharon Simmons
Check to daughter
The Broken Bit
Restaurant
Karsh's Bakery
Bakery items
Harvey's
Entertainment at Harvey's
Wagon Wheel, a nightclub
in Reno, Nev.
Rambalane
Boarding of pet dog at
kennel
Harvey's Wagon Wheel
Entertainment at nightclub
in Reno, Nev.
Virg's
Boat rental
Coast Stamps
Personal stamp collection
Columbia
Columbia Record Club
Thunderbird Resort
Entertainment at resort
hotel in Reno, Nev.
University of California
at Davis
Tuition for son's college
Otto Tamm
Painting at personal
residence
Frank Hudson
Plumbing repair at residence
Sears, Roebuck & Co.
Rugs and shutters at
residence
Frontier Chevrolet
Purchase of car for son
Coral Construction
Redecoration petitioner's
residence
Bet-R-Roofs, Inc.
New roof for personal
residence
*541 In determining the business income from the practice of his profession for the taxable year 1962 the petitioner deducted as business expenses the sum of $47,616. There were included in such expenses personal expenses of $28,637 incurred by petitioner and charged to the records of his office. Because of the deduction of such personal expenses in the computation of business income, the income reported by the petitioner in the joint return for the taxable year 1962 was understated in the amount of $28,637. The resulting underpayment of income tax for the taxable year 1962 was due to fraud with intent to evade taxes within the meaning of section 6653(b). In determining the business income from the practice of his profession for the taxable year 1963 the petitioner deducted as business expenses the sum of $50,090. There were included in such expenses personal expenses for $33,171 incurred by petitioner and charged to the records of his office. Because of the deduction of such personal expenses in the computation of business income, the income reported by the petitioner in the joint return for the taxable year 1963 was understated in the amount of $33,171. The resulting underpayment *542 of income tax for the taxable year 1963 was due to fraud with intent to evade taxes within the meaning of section 6653(b). In determining the business income from the practice of his profession for the taxable year 1964 the petitioner deducted as business expenses the sum of $61,569. There were included in such expenses personal expenses of $41,591 incurred by petitioner and charged to the records of his office. Because of the deduction of such personal expenses in the computation of business income, the income reported by the petitioner in the joint return for the taxable year 1964 was understated in the amount of $41,591. The resulting underpayment of income tax for the taxable year 1964 was due to fraud with intent to evade taxes within the meaning of section 6653(b). For the taxable year 1970 Marvin W. Simmons and Iva G. Simmons filed separate returns. In the return filed by Marvin W. Simmons there were reported business expenses in the amount of $31,140. Respondent disallowed $2,149 thereof. Similarly, for the taxable year 1970 Iva G. Simmons reported her share of the income of her husband pursuant to the community property laws of the state of California. Respondent *543 has disallowed $2,148 claimed as business expense for the taxable year 1970 on account of her proportionate share of the income earned by her husband in his profession allocable to her as her share of the community earnings. Petitioners presented no evidence with respect to these adjustments and accordingly will be presumed to have abandoned this issue. OPINION During the taxable years 1962 to 1964 inclusive, petitioner was engaged in the practice of medicine in Fresno, California. He practiced as a sole practitioner and had complete control over the books and records which he maintained to show the income from such practice. In this case the petitioner claimed personal expenses as expenses incurred in the practice of medicine knowing that such expenses were not deductible by him. He attempted to conceal the nature of the expenses by making false entries on his books and records. When petitioner was first examined, he attempted to mislead the examining revenue agent. He hoped to avoid the payment of taxes due from him. At the trial, petitioner elected not to testify with respect to any of the items which he charged as a business expense. Petitioner in the presentation *544 of his case admitted that the expenses in question were improperly charged to his office account. However, petitioner contended that there was no intent to defraud because he anticipated that when his returns for the taxable years 1962 to 1964 inclusive were audited by the Internal Revenue Service the expenses erroneously claimed by him would be disallowed. Petitioner's argument did not address itself to the intended result if the returns were not examined by the Internal Revenue Service. It is thus clear from the evidence that petitioner deducted innumerable personal expenditures as business expenses, knowingly and without regard to the fact that such deductions would result in a substantial understatement of his income for tha taxable years 1962, 1963 and 1964. Petitioner admittedly claimed deductions to which he was not entitled. As this Court said in affd. : Section 6653(b) provides that 50 percent of the underpayment of tax shall be added to the tax if any part of the underpayment is due to fraud. The imposition of the addition to tax for fraud is based *545 upon a state of mind, which is seldom susceptible of direct proof, but must be gleaned from all the facts and circumstances in the entire record. . Respondent, of course, bears the burden of proving fraud by clear and convincing evidence. ; . It is clear that for purpose of fraud an understatement of taxes can be accomplished by an overstatement of deductions. See , affd. (C.A. 2, 1970); , affirmed sub nom. (C.A..1, 1950); and . We think it is irrefutable that the course followed by the petitioner shows an intent to evade the payment of taxes due from him within the meaning of section 6653(b). We have so found. Accordingly, the assessment of the taxes due was timely. Because the petitioner filed a false or fraudulent return for the taxable years 1962 to 1964 inclusive, with intent *546 to evade tax, the tax may be assessed at may time under section 6501(c)(1). Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩